UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------X

UNITED STATES OF AMERICA

      -against-                                 12 Cr. 844 (RWS)

                                        SENTENCING
ALFONSO CASTILLO,                                      OPINION

                     Defendant.

-------------------------------------X

**Sweet, D.J.**


      On November 4, 2013, Alfonso Castillo ("Castillo" or
"Defendant") allocuted to three counts including two counts of
conspiracy to distribute and possess with the intent to
distribute 5 kilograms and more of cocaine in violation of 21
U.S.C. § 841(b)(1)(A) and one count of conspiracy to distribute
and possess with the intent to distribute 1 kilogram and more of
heroin, in violation of 21 U.S.C. § 841(b)(1)(A).


      For the reasons set forth below, Castillo will be
sentenced to 240 months' imprisonment followed by 10 years'
supervised release, subject to the scheduled sentencing hearing
on October 4, 2016.  Defendant is also required to pay a special
assessment of $300.

**Prior Proceedings**

Defendant was named in a three-count indictment (the "Indictment") filed in the Southern District of New York on December 18, 2012. The first count ("Count 1") of the indictment charges that from 2005, up to and including December 2012, the Defendant, and others, in the Southern District of New York and elsewhere, conspired to distribute and possess with intent to distribute 5 kilograms and more of cocaine, in violation of 21 U.S.C. § 841(b)(1)(A). The second count ("Count 2") of the indictment charges that from August 1, 2012 the Defendant, in the District of New Jersey, distributed and possessed with the intent to distribute 5 kilograms and more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). The third count ("Count 3") of the indictment charges that in 2011, the Defendant, and others, in the Southern District of New York and elsewhere, conspired to distribute and possess with intent to distribute 1 kilogram and more of heroin, in violation of 21 U.S.C. § 841(b)(1)(A).

On November 4, 2013, Castillo appeared before the Court and pled guilty to the three counts against him.

2

**The Sentencing Framework**

In accordance with the Supreme Court's decision in United States v. Booker, 543 U.S. 220 (2005), and the Second Circuit's decision in United States v. Crosby, 397 F.3d 103 (2d Cir. 2005), the sentence to be imposed was reached through consideration of all of the factors identified in 18 U.S.C. § 3553(a), including the Advisory Guidelines. Thus, the sentence to be imposed here is the result of a consideration of:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;

(2)  the need for the sentence imposed —

   (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

   (B)  to afford adequate deterrence to criminal conduct;

   (C)  to protect the public from further crimes of the defendant; and

   (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)  the kinds of sentences available;

(4)  the kinds of sentence and the sentencing range established for —

3

> (A)   the applicable category of offense committed
>       by the applicable category of defendant as set
>       forth in the guidelines . . .;
>
> (5)  any pertinent policy statement [issued by the
>      Sentencing Commission];
>
> (6)  the   need   to   avoid   unwarranted   sentence
>      disparities  among  defendants  with  similar
>      records who have been found guilty of similar
>      conduct; and
>
> (7)  the need to provide restitution to any victims of
>      the offense.

18 U.S.C. § 3553(a).  A sentencing judge is permitted to find all the facts appropriate for determining a sentence, whether that sentence is a so-called Guidelines sentence or not.  See Crosby, 397 F.3d at 114-15.

## The Defendant

The Court adopts the facts set forth in the Presentence Investigation Report ("PSR") with respect to Defendant's personal and family history.

## The Offense Conduct

Between approximately October of 2011 and August 1, 2012, Castillo, Alfredo Vasquez Esparra ("Esparra"), Eduardo Andino ("Andino"), Omar Aponte ("Aponte"), Wilfredo Aquino

4

("Aquino"), Julio Cesar Cruz-Cordero ("Cruz-Cordero"), Antonio
Gabriel Jimenez Baez ("Baez"), Ricardo Javier Martino-Serrano
("Martino-Serrano"), Nelson Gustavo Colon-Torrez ("Colon-
Torrez"), Eric Fernandez ("Fernandez"), and Pablo Ventura-Nieves
("Ventura-Nieves") conspired to transport approximately 2,000
kilograms of cocaine from Puerto Rico to New Jersey, for
ultimate distribution in the Southern District of New York and
other locations.

Martino-Serrano obtained the cocaine from various
sources in Puerto Rico who were looking to ship cocaine to the
New York area.  Colon-Torrez was responsible for organizing the
shipping logistics.  He hired several individuals, including
Ventura-Nieves, Aponte, Andino, and others to assist in
packaging the cocaine in Puerto Rico and delivering it in New
York.

Colon-Torrez and Martino-Serrano arranged for the
cocaine to be brought to Andino's house in Puerto Rico.  Once
there, Andino and Aponte would construct hollowed out sets of
bamboo flooring; insert the kilograms of cocaine into the
flooring; and put the flooring back in the boxes it had come in.
Multiple boxes of flooring would then be stacked onto pallets to
be shipped north.

5

Colon-Torrez delegated the details of the shipping to Ventura-Nieves, who — with at least one other uncharged co-conspirator — arranged for the cocaine to be shipped from Puerto Rico to New Jersey by using a shipping company (the "Shipping Company") owned by Gloria Rodriguez ("Rodriguez"). Rodriguez created false documentation using the Shipping Company's name, including fake invoices and sham bills of lading, to ship the merchandise on the false premise that the (cocaine-laden) wood pallets were being sold by a flooring company in Puerto Rico to a general contractor in New York or New Jersey. Esparra had a trucking company and worked with Ventura-Nieves in transporting the flooring.

On various occasions in 2011 and 2012, Ventura-Nieves brought the wood flooring to Andino's house, where the drugs would be loaded into the flooring. When the cocaine was loaded, Ventura-Nieves retrieved the pallets of wood flooring from Andino's house and brought it to the Shipping Company's facilities in Puerto Rico.

Ventura-Nieves rented a warehouse (the "Warehouse") in Bayonne, New Jersey, to be used to break open the pallets of wood flooring once they had arrived from Puerto Rico. Ventura-

6

Nieves also rented an apartment above the warehouse for him, Andino, Aponte, and others could stay in New Jersey.

On various occasions in 2011 and 2012, Ventura-Nieves and Esparra picked the wood pallets up at the Shipping Company's facilities in New Jersey, and brought the pallets back to staging locations, including the Warehouse. Esparra typically signed to pick up the cocaine-filled wood. Once at the Warehouse, Andino and Aponte would remove the cocaine from the flooring, while Ventura-Nieves and Esparra would either reconstruct the flooring or destroy the flooring, depending on whether the group had decided to re-use the flooring for a future venture.

Andino and Aponte then delivered the cocaine to various individuals. These individuals' contact information had been provided to Colon-Torrez and Serrano in Puerto Rico by the owners of the drugs, and Colon-Torrez and Serrano in turn provided the contact information to Andino and Aponte. Typically, Andino and Aponte would meet the relevant individual in a public parking lot; take that individual's car back to the Warehouse and load it with boxes of cocaine; and return the car to the individual in the parking lot.

Castillo and Fernandez were narcotics traffickers and partners who sent cocaine from Puerto Rico to New Jersey using the above-described method.  Fernandez made arrangements with Serrano to have the cocaine delivered from Puerto Rico to New York.  Typically, Fernandez and Castillo transported between 10 and 100 kilograms per shipment.  In addition, Fernandez helped Serrano in Puerto Rico to pick up and deliver drugs to Colon-Torrez for shipment to the New York/New Jersey area.

Separately, working with Castillo, Fernandez sent two kilograms of cocaine in the mail to Jimenez-Baez.

Jimenez-Baez also arranged with Castillo to purchase 10 kilograms of cocaine from sources in the Caribbean, and obtained that cocaine in Miami, Florida, in October 2012.

Aquino was employed by Castillo as a courier and was sent to New Jersey on multiple occasions to pick up Castillo's cocaine from Andino and Aponte.

On August 1, 2012, Aquino traveled from the Southern District of New York to New Jersey to pick up 28 kilograms of cocaine from Andino and Aponte.  They met in a Burger King parking lot in Bayonne, and Andino and Aponte then brought

8

Aquino's car back to the Warehouse to load it with drugs. They returned the drug-filled car to Aquino. Aquino's car was then pulled over by law enforcement, and the 28 kilograms were seized. Shortly thereafter, Andino and Aponte, driving a Cadillac Escalade and a minivan, respectively, were pulled over. Approximately 20 additional kilograms of cocaine were seized from the Escalade. The Escalade belonged to another customer, and the seized drugs had just been loaded into it at the Warehouse.

Agents obtained consent from Andino to search the Warehouse, where they seized approximately 300 kilograms of cocaine as well as many boxes of both intact and hollowed-out bamboo flooring. In October 2012, the DEA intercepted a package sent by Fernandez to Castillo containing 2 kilograms of cocaine.

Additionally, in October 2012, the DEA intercepted a package sent by Fernandez to Castillo containing 2 kilograms of cocaine. According to the Government, Castillo helped co-defendant Cruz-Cordero transport approximately 2 to 4 kilograms of heroin into the United States on two occasions in 2011. Castillo sold the heroin in New York and made between six and eight thousand dollars profit per kilogram.

9

For his role in the offense, Castillo is held accountable for conspiring to distribute more than 150 kilograms of cocaine and between 3 and 10 kilograms of heroin.

## The Relevant Statutory Provisions

The maximum term of imprisonment for Counts 1, 2, and 3 is life imprisonment (per count). If a term of imprisonment is imposed, the Court is required to impose a term of at least 10 years' supervised release per count, pursuant to 21 U.S.C. § 841(b)(1)(A), which can run concurrently. Defendant is not eligible for probation because the instant offense is a Class A Felony. 18 U.S.C. § 846; U.S.S.G. § 5B1.1.(b)(1).

The maximum fine is $20,000,000 per count, pursuant to 18 U.S.C. § 3571(b). A special assessment of $300 ($100 per count) is mandatory pursuant to 18 U.S.C. § 3013.

## The Guidelines

The 2015 edition of the United States Sentencing Commission Guidelines Manual, incorporating all guideline amendments, has been used in this case for calculation purposes, pursuant to U.S.S.G. § 1B1.11.

10

The guidelines for 21 U.S.C. § 841(b)(1)(A) and 21
U.S.C. § 846 is found in U.S.S.G. §§ 2D1.1(a)(5) and
2D1.1(c)(2), pursuant to which Counts 1-3 are grouped for
guideline calculation purposes.  U.S.S.G. § 3D1.2(d).  Castillo
has a base offense level of 36 because he is responsible for 150
kilograms of cocaine and 3 kilograms of heroin.

The Defendant has assisted authorities in the
investigation or prosecution of the Defendant's own misconduct
by notifying authorities of the intention to enter a plea of
guilty.  Accordingly, the offense level is decreased by two
levels.  U.S.S.G. § 3E1.1(a).

The Defendant has assisted authorities in the
investigation or prosecution of the Defendant's own misconduct
by timely notifying authorities of the intention to enter a plea
of guilty.  Accordingly, the offense level is decreased by one
additional level.  U.S.S.G. § 3E1.1(b).

The Defendant has three adult convictions.  On October
3, 1994, the Defendant was sentenced to two years' probation for
Grand Larceny in the third degree in Orange County Court in

11

Orlando, Florida.  Pursuant to U.S.S.G. § 4A1.2(e)(3), this conviction warrants no criminal history points.

On July 1, 2001, the Defendant was sentenced to 37 months' imprisonment for possession of and conspiracy to possess cocaine in the District of Puerto Rico.  Pursuant to U.S.S.G. §§ 4A1.1(a) and 4A1.2(e)(1), this conviction warrants 3 criminal history points.

On August 13, 2010, the Defendant was sentenced to time served (8 months' imprisonment) for Concealment of a Material Fact to a Federal Officer in the District of Puerto Rico.  Pursuant to U.S.S.G. §§ 4A1.1(b) and 4A1.2(e)(2), this conviction warrants 2 criminal history points.

The Defendant has a total criminal history score of five.  The Defendant committed the instant offense while under supervised release for a conviction for Possession of Cocaine and Conspiracy to Possess Cocaine; therefore, two points are added.  U.S.S.G. § 4A1.1(d).  According to the sentencing table in U.S.S.G. Chapter 5, Part A, a criminal history score of seven establishes a criminal history category of IV.

12

Based on a total offense level of 33 and a Criminal History Category of IV, the guideline range of imprisonment is 188-235 months.  However, the mandatory minimum sentence for this offense is 240 months' imprisonment because Castillo already has "a prior conviction for a felony drug offense [that] has become final."  21 U.S.C. § 841(b)(1)(A).  This mandatory minimum sentence exceeds the guidelines range.  Therefore the guideline term is 240 months.  U.S.S.G. § 5G1.2(b).

The statutory and guideline range for a term of supervised release is at least ten years per count and can run concurrently.  21 U.S.C. §§ 841(b)(1)(A) & 846.

The Defendant is ineligible for probation because the offense is a Class A Felony.  18 U.S.C. § 3561(a)(1); U.S.S.G. § 5B1.1(b)(1).

The fine range for this offense is $17,500 to $60,000,000.  21 U.S.C. § 841(b)(1)(A); U.S.S.G. § 5E1.2(c)(4). In determining whether to impose a fine and the amount of such a fine, the Court shall consider, among other factors, the expected costs to the government of any term of probation, or term of imprisonment and term of supervised release imposed.  18 U.S.C. § 3572(a)(6); U.S.S.G. § 5E1.2(d)(7).  These costs may

13

include drug and alcohol treatment, electronic monitoring, and/or contract confinement costs. The most recent advisory from the Administrative Office of the United States Courts, dated June 16, 2015, provides a daily cost of $84.00, a monthly cost of $2,552.00, and an annual cost of $30,621.00 for imprisonment.

## The Remaining Factors of 18 U.S.C. § 3553(a)

Having engaged in the Guidelines analysis, this Court also gives due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) to impose a sentence "sufficient, but not greater than necessary," as is required by the Supreme Court's decision in Booker, 543 U.S. 220, and the Second Circuit's decision in Crosby, 397 F.3d 103. In light of the Court's statutory responsibility "to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing," Kimbrough v. United States, 552 U.S. 85, 102 (2007) (quoting 18 U.S.C. § 3553(a)), having considered the Guidelines and all of the factors set forth in § 3553(a), and having received a U.S.S.G. § 5K1.1 motion from the Government, the Court will depart downward.

14

## The Sentence

For the instant offenses, Castillo shall be sentenced to 240 months' imprisonment, followed by 10 years' supervised release.

As mandatory conditions of his supervised release, Defendant shall:

(1) Not commit another federal, state, or local crime.

(2) Not illegally possess a controlled substance.

(3) Not possess a firearm or destructive device.

(4) Not use any unlawful controlled substance. The Defendant shall submit to one drug test within 15 days of placement on probation or supervised release and at least two unscheduled drug tests thereafter, as directed by the probation officer.

(5) Cooperate in the collection of DNA as directed by the probation officer.

The standard conditions of supervision (1-13) are recommended with the following special conditions:

(1) The Defendant shall report to the nearest Probation Office within 72 hours of release from custody.

(2) Defendant shall submit his person, residence, place of business, vehicle, and any other property or electronic devices under his control to a search on the basis that the probation officer has reasonable suspicion that contraband or evidence of a violation of the conditions of the release may be found. The

15

search must be conducted at a reasonable time and in a reasonable manner. Failure to submit to a search may be grounds for revocation. Defendant shall inform any other residents that the premises may be subject to search pursuant to this condition.

(3)  Defendant is to be supervised by his district of residence.

It is further ordered that Defendant shall pay to the United States a special assessment of $300, which shall be due immediately.

The Court waives any fine because of the Defendant's inability to pay a fine.

16

As a result of committing the offenses alleged in Counts 1-3, the Defendant shall forfeit to the United States all property real and personal, involved in the offense or traceable to such property.   18 U.S.C. § 1963(a)(1-3).


It is so ordered.


**New York, NY**
**September  2ɤ  2016**

ROBERT W. SWEET
U.S.D.J.

17